S. S. PEGUES ET AL V. J. C. DILWORTH, JR.

No. 7298. Decided November 8, 1939.
Rehearing overruled December 20, 1939.
(132 S. W., 2d Series, 582.)

170

*Jackson & Crawford, Boyle, Wheeler, Gresham & Terrell,* all of San Antonio, for plaintiff in error.

Where a suit is not for rescission of a contract but is one for reformation and enforcement of the contract as reformed there must be competent evidence of a mutual mistake of fact as distinguished from a unilateral mistake, and there being no evidence in this case of any material mutual mistake of fact at the time the written contract was drawn and executed there was no issue to go to the jury and it was error for the Court of Civil Appeals to affirm the judgment of the trial court which in effect was to reform the written contract and give relief under it as reformed. Waco Tap R. R. Co. v. Shirley, 45 Texas 355; Sun Oil Co. v. Bennett, 126 Texas 269, 84 S. W. (2d) 447; Tunnell v. Neil 33 S. W. (2d) 530.

*J. W. Sutton* and *L. B. Cooper,* both of Cotulla, for defendant in error.

Either party to a written contract for a sale of cattle and lease of pasturage may have same reformed and enforce performance of the other party upon showing that they contracted through mutual mistake of some material fact or facts or by showing unilateral mistake or mistakes of fact on his part and fraud on the part of the other party. Estes v. Ferguson, 203 S. W. 941; Summitt v. Hilton, 9 S. W. (2d) 767; Garsee v. Indemnity Ins. Co., 47 S. W. (2d) 654.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

J. C. Dilworth, Jr., sued S. S. Pegues and J. E. Baylor, individually and as co-partners of the partnership, Pegues & Baylor, and the Stockmen's National Bank in Cotulla, Texas, as their escrow agent, to reform and enforce the following cattle sales contract signed on August 9, 1935, by Dilworth, as seller, and Baylor and Pegues as buyers:

"This Contract for the purchase and sale of cattle made and entered into this August 9th, 1935, by and between J. C. Dilworth, Jr., on the one part and Pegues and Baylor, a firm composed of S. S. Pegues of Zavala County, Texas and J. E. Baylor of Dimmit County, Texas.
"Witnesseth:
"The said J. C. Dilworth, Jr., is the owner of eight hundred head of merchantable cows, some with calves, and a few two year old heifers and bulls, now located the Huisache pasture, a subdivision of the Cammarron Ranch, in La Salle and McMullen Counties, upon which he has a lease expiring

October 15, 1935, at 17 cents per acre per annum, payable quarterly in advance.

"The said Dilworth hereby sells and agrees to deliver to the said Pegues and Baylor, eight hundred of the above cows, two year olds and bulls, for and at the agreed price of $40.00 per head for cows, and $40.00 per head for two year olds and bulls, to be paid for in cash at the time and place of delivery.

"The above cattle are all branded on right hip, except calves, which are to be thrown in with mothers without additional charge. Yearlings at $25.00 per head. This contract covers not to exceed 800 cows and such others as are in said pasture.

"This sale is subject to the following requirements of the said Dilworth, to-wit:

"(a) The said Dilworth agrees to first get a lease from the owner of the Cammarron Ranch to Pegues and Baylor, at a price of 17 cents per acre per annum, for a period of three years from its date, payable semi-annually in advance.

"(b) The said Dilworth agrees to deliver all of said cattle in such Huisache Pasture, free from ticks, and inspected by any authorized State cattle inspector, all cattle to be by said Inspector, 'Scratched and passed' as clean.

"The said Dilworth may continue to use the remaining portion of such Cammarron Ranch, except such Huisache pasture, until October 15, or longer if agreeable, but shall pay his pro-rata share of the lease for the acreage and time used by him.

"The said Pegues and Baylor hereby, with the execution of this contract, deposit in the Stockmen's National Bank of Cotulla, Texas, the sum of $5,000.00, which sum is to be held by said Bank in escrow, pending the fulfillment of this agreement.

"It is agreed that said sum is deposited in said Bank, in escrow, together with a copy of this contract, and if faithfully performed by the said· Dilworth, such sum may be used by the said Pegues and Baylor in making final payment for the cattle hereby purchased by them. If, however, the said Dilworth faithfully performs his agreement, and the said Pegues and Baylor refuse to accept said lease and cattle, then such sum is to be forfeited to the said Dilworth. If the said Dilworth cannot or does not deliver said lease, acceptable to te said Pegues and Baylor, or if he fails to deliver such cattle free from ticks, as herein provided, then the deposit hereby made shall be returned to them, and this contract shall be void

"If the said Dilworth can fulfill this contract and fails or refuses to do so, then and in that event he shall be liable to

the said Pegues *an* Baylor for any and all damages suffered by them.

"The said Dilworth agrees to deliver the above lease, covering approximately 46,700 acres of land, and all cattle covered hereby, as contracted, within 30 days from this date."

The lease referred to in the foregoing contract is from A. Mac Washburn as lessor to J. C. Dilworth, Jr., as lessee. Washburn's representative is J. T. Pearson at Fort Worth. The lease term is from October 1, 1934, to October 1, 1936. The lease covers 46,700 acres consisting of five pastures, the Huisache, Quintenilla, Big Alamo, Little Alamo and West Green Branch. It gives Dilworth "the right to have the lease extended for a term of two years from its expiration date (October 1, 1936) upon his giving the lessor notice in writing sixty days" before such date of his intention to exercise his option to extend. It is stipulated in the lease in this connection that the rental in the event of an exercise of the option "shall be for an amount equal to the sum then offered lessor by another, or other, prospective tenants." The lease has also a sale provision that if the lessor should sell the ranch "without being able to reserve to the lessee" the lease for its full term, then lessor might terminate it upon giving the lessee sixty days written notice.

Upon conclusion of the evidence the buyers moved for an instructed verdict against the seller upon his alleged cause of action, and for a peremptory instruction in their favor on their cross action against him and the bank. Both motions were denied and upon findings of the jury judgment was rendered in favor of the seller and against the bank and the buyers. The Court of Civil Appeals affirmed the trial court's judgment. 104. S. W. (2d) 558.

It is contended by Baylor and Pegues that the case turns upon the proposition that Dilworth's obligation with respect to the lease was under the terms of the signed agreement (under their view, the real agreement), and was to procure for them a lease of the ranch *direct from the owner for a period of three years* for seventeen cents per acre per annum, rather than *deliver to them an assignment and extension of Dilworth's then existing lease.*

Dilworth contends that his obligation was, in addition to other obligations not necessary to discuss, *to deliver to the buyers his then existing lease and to procure for them from the owner a two-year extension thereof at the price stated.*

The trial court submitted to the jury, among others, two special issues. The first inquires substantially whether at the time the written contract was executed Dilworth and Baylor had agreed that Dilworth was to assign his then existing lease to Baylor and Pegues and procure for them a two-year extension thereof at seventeen cents per acre per annum. The second inquires whether the provision of the signed agreement to the effect that Dilworth agreed to first get a lease from the owner of the ranch to Pegues and Baylor at a price of seventeen cents per acre per annum for a period of three years, was inserted therein by mutual mistake of the parties. Both issues were answered in the affirmative, and upon the findings thus made the judgment above referred to was rendered by the trial court.

Four other issues were submitted to the jury. The answers are favorable to the seller but are wholly evidentiary and could not be made the basis of a judgment. They are immaterial in view of the disposition to be made of the case and need not be further referred to.

Baylor and Pegues contend that there is no competent evidence to sustain the findings upon either of the issues, and especially that there is no such evidence to sustain the findings upon the issue of mutual mistake, when tested by the requirement that there must be clear and exact evidence that the intention of the parties, with respect to their alleged agreement, continued concurrently in their minds down to the time of the execution of the contract.

The evidence presently to be discussed, including that detailing the prior negotiations of the parties, is competent upon the applicable principle that when, as here, the equitable ground of mutual mistake is alleged, courts of equity have a broader jurisdiction in the matter of inquiring into negotiations leading up to the execution of written agreements than courts of law, "and will open the written contract to let in matters arising from facts perfectly distinct from the sense and construction of the instrument itself, proceeding on the theory that the previous oral agreement subsists as a binding contract, notwithstanding the attempt to put it in writing * * *." 10 R. C. L. p. 300, sec. 43. It is a correct legal proposition that equity has jurisdiction to reform written instruments in cases of mistake, even in the absence of fraud, provided the mistake is mutual; that is, "common to both parties, and each under the same mistake as to its terms." St. Paul Fire

& Marine Ins. Co. v. Culwell, 62 S. W. (2d) 100. It is the law of this State, recently reiterated in Sun Oil Company v. Bennett, 125 Texas 540, 84 S. W. (2d) 447, that where a suit is for reformation there must be a finding upon evidence that is "clear exact, and satisfactory" that the mistake of fact was mutual; also, as stated in the same case, that the party seeking reformation must prove by such evidence not only "what the true agreement was," but "must go further and establish the fact that the term or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake."

The testimony most favorable to Dilworth's contention that the jury's finding upon the issue of mutual mistake is supported by competent evidence, will be examined in the light of the foregoing legal principles.

Baylor testified that "he had only two items, one, * * * the cattle in this certain pasture (Huisache) had to be free of ticks, and (the other that) he (Baylor) should get a three-year lease on the ranch"; also that "the ranch was the principal question for this deal" and that he was willing "to take a loss of $5.00 a head on these cattle" to get the ranch.

Dilworth testified in response to an inquiry as to when the cattle were to be delivered that "we (he and Baylor) agreed on the following Thursday; it was the eighth of August, anyway, that he was to receive them." He testified also that Baylor said nothing about getting a *"straight* three-year lease," and that while they discussed the sales clause in the lease, Baylor did not object to it; that he said to Baylor there were two things in the lease that he might object to, one, that "in case of sale there were only sixty days notice given to vacate the ranch, and the other, * * * the limit to the number of cattle * * * you could run on this pasture (Huisache), which was 2,000 head"; that Mr. Baylor told him that was all right, that he had a lease about like that and * * * could get around that." He further testified that the only question raised by Baylor with respect to the kind of lease to be turned over by him was that concerning the price, and that the only discussion that ever came up was over that question; also that up to the time he was testifying upon the trial he had never had any discussion contrary to that just stated. The tenor of his testimony on this point was that he did not have a *straight* three-year lease and "couldn't agree on something I didn't have;" that what the parties did agree upon was a transfer of the

lease by him to the buyers and that he got it extended by the owner of the ranch for two years.

W. T. Morgan, Jr., testified that "they (Dilworth and Baylor) agreed on the first (of August) what to do on the 8th; agreed to sell the cattle and Mr. Baylor agreed to receive them"; that the agreement with respect to leasing the ranch was that Dilworth would turn over his then existing lease to Baylor and get a two-year extension of it. W. T. Morgan, Sr., testified on this point that Mr. Baylor wanted the lease for three years at seventeen cents per acre and that finally Dilworth said if they charged him more than that he would make it good and that Mr. Baylor said "all right"; that Dilworth told Baylod he could get the extension on the lease and that he "already had one more year to go on his lease." Mr. Morgan testified relative to the kind and character of lease Dilworth was to furnish; that he heard Dilworth tell Baylor that his lease expired on the first of October, 1936, and that he had an option of two more years, and that he would turn over the lease to him; that he told Baylor "he would turn over his lease, exercise his option and get a two-year extension at 17 cents," and that in the event it cost any more he would pay it.

There is testimony to the effect that the forfeit agreement written into the contract was executed by Dilworth on August eighth when the buyers procured from him a delay in the delivery of the cattle after they had been gathered and corralled in a corner trap of the Huisache pasture for that purpose; and that the postponment was for the purpose of letting the cattle be "scratched," and for corralling the 25 or 30 head that had been missed in gathering the cattle from a large area. The testimony of Pegues on this subject is that they (he and Baylor) "went down to the Huisache pasture to watch them pass on some cattle for ticks." There is evidence to support the contention that the forfeit provision was merely added to those previously agreed upon and that the contract was not reduced to writing for the purpose of changing the terms of the agreement already made with respect to the character of lease which the seller had agreed to get for the buyers. Attorneys for the buyers quote in their written argument in support of their view on the matter of reducing the contract to writing, the following excerpt from the testimony of Dilworth:

"They came about noon, I think. We rode through the herd. We had agreed to have the herd in a corner trap; we rode through the herd and looked them over and then the Tick Inspectors were riding in there at that time. We asked Mr. New-

man if the cattle were clean and he said they were, he couldn't find any ticks. He and Mr. Stephenson (tick inspectors) were riding through the herd and they called it a clean bunch of cattle; Mr. Baylor wanted them scratched; it was hot that day. I told him it was too hot and we wouldn't have time and asked him if he would stand the loss on what we lost and he said, no, he wouldn't. He said he wanted them scratched and he asked that all the cattle be gathered. I asked Mr. Morgan how many he thought were outside, and he said about twenty-five to thirty head—Baylor said he wanted them all and wanted all the cattle scratched that may be there with ticks on some cattle that were outside. I told him (Baylor) he could take what he had gathered—he had agreed to keep them all and he could get the rest later. He said, no, he wanted to get all and get them scratched, so we decided to put off the delivery, and that's when he said he would put up the forfeit on the cattle and I asked $5,000.00 forfeit for these cattle. He said that was all right, and that a contract would not be necessary, he could just write on the check what it was for. He went to talk to Pegues and he (Pegues) decided he wanted a contract, I said that was all right, we could go to Cotulla and write the contract."

The parties a few days after the contract was reduced to writing went to Fort Worth to get the matter of the lease settled, Baylor contending here that the purpose of their going was "to get a three-year lease from the owner of the ranch, or perhaps from" his representative; and Dilworth contending that the purpose was to get the consent of the owner for him (Dilworth) to transfer his existing lease to the buyers and get it extended for two years and to help the buyers to get the best deal they could with the owner. The buyers asked for a straight three-year lease with the notice of sale clause eliminated. This was refused. Baylor said they "were not interested in the extension unless the sales clause was out." The buyers finally talked long distance to Washburn in Minnesota, paying for the call, but could not get his consent to eliminate the sales clause or get a straight lease without such clause. Pearson consented on behalf of the owner to extend the existing lease for two years, but Baylor and Pegues told Dilworth that they "would refuse everything except an unconditional three-year lease."

█ It appears from the foregoing summary of the testimony that there is evidence to support the jury's findings under consideration. In so far as it is the prerogative of the Supreme

Court to determine, the evidence is "clear and satisfactory," in that it "is not ambiguous, equivocal or contradictory," and is such as convinced a presumably unbiased and unprejudiced jury. 17 Tex. Jur. p. 919, sec. 414, par. 2. Massie v. Hutcheson (Com. App.), 270 S. W. 544; id. (Civ. App. wr. ref.), 296 S. W. 939. Since there was some substantial evidence of the character stated, and since the Court of Civil Appeals in the exercise of its prerogative held it to be sufficient to support the findings made, this Court is bound by that holding. Choate v. San Antonio & A. P. R. Co. 91 Texas 406, 44 S. W. 69; Carl v. Settegast (Com. App.), 237 S. W. 238. We are unable to say in the light of the testimony before us that there was no such evidence. We decline to disturb the holding of the Court of Civil Appeals on this point.

■ It is contended by the buyers that even though Baylor knew what the agreement with respect to the lease was, and that the lease clause was written into the contract by mistake, Pegues, who was not present when the prior negotiations concerning the lease was had, did not know these facts. It is undisputed in the evidence that the agreement by Baylor and Pegues to purchase the cattle was a partnership agreement. The fact that both partners signed the contract, and did not sign the partnership name, by one or both, is without legal significance so far as application of the general rule that in partnership affairs each partner is the agent of the other, is concerned. There is no sworn denial by the buyers of their alleged partnership relation. We approve the holding of the Court of Civil Appeals on the proposition relating to this question. Neither of the two opinions in Dale v. Simon (Civ. App.), 248 S. W. 703, id. (Com. App.) 267 S. W. 467, relied upon by the buyers, holds to the contrary. It is sufficient to say that in neither opinion did the decision turn on the proposition that the transaction in question, to wit, payment of a lease rental alleged to have been paid by Simon and Brown under duress, was a partnership transaction. Recovery was allowed Simon on the ground that he made his half of the payment under duress, and was denied Brown on the ground that he made his half of the payment voluntarily. No contention is made in this case by the buyers that the deposit in escrow of the $5,000.00 sought to be recovered by them is other than a partnership transaction, and no question of estoppel is involved.

■ We also approve the holding of the Court of Civil Appeals on the assignment alleging it erred in not setting aside the judgment of the trial court because of improper argument on

the part of the attorney for Dilworth. The question involved is fully discussed by Commissioner Sharp (now Associate Justice) in Dallas Ry. & Terminal Co. v. Bankston (Com. App.) 51 S. W. (2d) 304, cited by the Court of Civil Appeals.

The argument complained of only urged that all of the issues should be answered "yes." It did not improperly go further and urge the jury to so answer the issues in order that plaintiff might win. The argument did not go beyond the "latitude allowed an attorney in presenting his client's case." Id. p. 310.

None of the propositions presented by plaintiffs in error in their application for the writ presented reversible error on the part of the Court of Civil Appeals. Its judgment affirming that of the trial court is therefore affirmed. It is so ordered.

Opinion adopted by the Supreme Court November 8, 1939.

Rehearing overruled December 20, 1939.