**CHANOUX et ux. v. MESA CORP.**

No. 4788.

Court of Civil Appeals of Texas. El Paso, March 28, 1951.

Rehearing Denied May 2, 1951.

Second Rehearing Denied June 27, 1951.

742

------◆------

R. C. White, Ernest Guinn, El Paso, for appellants.

Walshe & Newman, El Paso, for appellee.

McGILL, Justice.

Appellee as plaintiff filed this suit against appellants and Mortgage Investment Company of El Paso, Texas, a corporation, as defendants seeking to reform a deed executed and delivered by appellee to appellants and a deed of trust executed and delivered by appellants to Mortgage Investment Company. Trial to the court without a jury resulted in a judgment granting reformation of both instruments. Appellants have perfected their appeal. The Mortgage Investment Company did not appeal.

At the request of appellants the court filed Findings of Fact and Conclusions of Law. The findings and conclusions deemed material to a proper disposition of this appeal will be hereinafter noticed.

The following facts appear from the findings and uncontroverted evidence: Appellee, Mesa Corporation, was the owner of eight contiguous lots in Block 5 of Terry Allen Addition to the city of El Paso, Texas. A map of Block 5 showing the dimensions of these lots was on file in the front of Book 573 of the Deed Records of El Paso County. The property involved in this controversy is a portion of Lot 12, Block 5. In January, 1949, appellee had Mr. S. A. Colwell, a State licensed land surveyor, make a survey of the 8 lots in Block 5, including lots 12 and 13, which were adjoining lots. The lots were then vacant, and the purpose of the survey was to mark their boundary lines so that dwelling houses and other improvements might be erected thereon. This Colwell did, correctly staking out the boundary lines of lot 12 according to the footage thereof shown by the map and plat of Block 5 on file. The correct shape of lot 12, according to these dimensions was a "Pie shape", with the front end of the piece of pie cut off, since the front of the lot faced St. John Road on a curve. The length of the boundary lines was approximately 55 feet fronting north on St. John Road, the west and east boundary lines extending generally in a southerly direction approximately 125 feet each, and the south or rear line being approximately 55 ft. plus 26 feet, the point between these distances representing a rather abrupt curve in the rear line. Lot 13 adjoins lot 12 on its east boundary. Colwell placed a stake on the south line of lot 12 at a point between the 55 foot and the 26 foot distances and also a stake at the other end of the 26 ft. distance which was the true southeast corner of lot 12 and southwest corner of lot 13. Thereafter, between January and June, 1949, appellee, which did its own building, began construction of a dwelling house and improvements on lot 12, and also a dwelling house and improvements on lot 13. Through mistake it supposed the stake placed between the 55 feet and 26 ft. distances was the common corner of lots 12 and 13, and built the garage which it intended to be appurtenant to and for use with the dwelling on lot 13, on the 26 feet of lot 12; it also erected from this point toward the front of lot 12 a rock wall which it supposed marked the east boundary line of lot 12. These improvements cut off of lot 12 a triangular strip approximately 26 feet on the rear of lot 12, and which converged to the northeast corner of lot 12 and the northwest corner of lot 13. After these improvements had been placed on the property by appellee, Colwell at the request of appellee made another survey for the purpose of showing the location of the improvements. He erroneously showed the garage to be located on lot 13 and the wall as being on the boundary line between lots 12 and 13. He furnished appellee with a sketch of his survey, certified to by him on June 17, 1949, which reveals this error. We here reproduce this sketch.

PLAT NO. 27

SURVEY BOOK 7' PAGE 27

ST. John Road 50

N 57°46 E

EL PASO, TEXAS   Jan-11 1949

S.A. Colwell
LICENSED STATE LAND SURVEYOR

S. A. COLWELL, SURVEYOR
310 TEXAS STREET
EL PASO, TEXAS

MR. Bill Elliott

SURVEY OF Lots 10-11-12-13
BIK-5 Terex Allen Sub.

I S.A. Colwell Licensed State Land Surveyor do hereby Certify That The foregoing Survey was made by me and Emp. Showberg oil

Note Garages are on Easement

This The 17th day June 1949

S.A. Colwell
Licensed State Land Surveyor

NOTE:
REPRESENTS   STAKE
IRON
MONUMENT

| PROPERTY GRADES | | | | |
|---|---|---|---|---|
| POINT | ELEV | GRADE | CUT | FILL |
|  |  |  |  |  |
|  |  |  |  |  |

(PIPE)   Easement

House   Gar   Rwall

'81AL 2-3423

Thereafter, prior to July 2, 1949, appellant June B. Chanoux, who was in ill health, came to El Paso and was looking for a suitable home to purchase. Mr. Wm. J. Elliott, President of appellee, showed her and her mother, Mrs. Bronke, who was with her, the house on lot 12, and also the house on lot 13. The house on lot 12 had not been entirely completed and there was debris in the yards at the rear of each house. The house on lot 12 was then numbered 1622 St. John Road and the house on lot 13 was numbered 1624 St. John Road. When Mr. Elliott showed the houses to Mrs. Chanoux she inquired about the dimensions of lot 12. Mr. Elliott had in his possession the sketch showing the survey certified to by Colwell on June 17, 1949, and read the footage of its boundary lines as shown on this sketch to her. He does not deny that he told Mrs. Chanoux and Mrs. Bronke that appellants were buying the lot according to the plat, nor that Mrs. Chanoux told him "that she was not buying for the rock wall or the trees, but was buying for the lot"; or that since that time he had told appellants and Mrs. Bronke that the Chanoux were buying lot 12 according to the plat, nor that he told Mrs. Chanoux how to describe the property when she wrote to her husband sending him the earnest money contract for his signature. Mrs. Chanoux testified that he told her on that occasion that the lot was approximately 130 feet in length by an average of 64 feet in width. He testified that Mr. Chanoux had not seen the property before he signed the earnest money contract on July 2, 1949, and it appears without dispute that Mr. Chanoux was in Chicago up to this date and had not seen the property before he signed such contract. The Chanoux moved into the house on lot 12 about a week after signing the earnest money contract, and have occupied it since that time. They applied to the Mortgage Investment Company for a $7,500 loan to apply on the purchase price. The loan was approved and the Mortgage Investment Company drew the deed and deed of trust which appellee seeks to reform. The deed retained a vendor's lien in favor of the Mortgage Investment Co. to secure the $7,500 loan and the deed of trust executed by appellant was given to secure the same loan. The property is described in the earnest money contract as "lot 12 in block 5 of Terry Allen Addition to the city of El Paso, also known as 1622 St. John Rd."

In the deed and deed of trust, which was also drawn by the Mortgage Investment Company, it is described as: "Lot 12, Block 5, Terry Allen Addition to the City of El Paso, El Paso County, Texas, according to the map of Block 5 on file in the front of Book 573, Deed Records of El Paso County, Texas."

These instruments were executed and delivered on September 19, 1949. On August 28, 1949, appellee entered into a written contract with Robert L. Cooch and wife, Merry June Cooch, agreeing to sell them "Lot 13 in Block 5 of Terry Allen Addition to the City of El Paso, also known as 1624 St. John Rd.", and shortly thereafter the Cooches moved into the house on the property and occupied the garage built on the triangular tract of lot 12. In the latter part of February, 1950, when the Cooches sought a loan from the Mortgage Investment Company it was discovered the garage they had been occupying had built on the triangular tract within the true boundary lines of lot 12. Colwell again surveyed the property at that time and the plat of his survey showing the true boundary lines of lot 12, the location of the garage and the triangular portion of lot 12 which is in controversy is here reproduced.

The judgment reforms the deed and deed of trust so as to except from lot 12 this triangular tract.

The court, among his Findings of Fact, found:

"12. The Plaintiff intended to convey only the land within the marked boundary walls of the premises known as 1622 St. John Road, and had the survey been accurate, would have conveyed Lot 12, save and except the triangle lying without said walls. The Defendant Mortgage Investment Company of El Paso, Texas, intended its Vendor's lien and Deed of Trust to cover only such property.

745

PLAT NO. 3

SURVEY BOOK 88 PAGE 2

DIAL 2-3423

S A. COLWELL, SURVEYOR
420 TEXAS STREET
EL PASO, TEXAS

MR. Elliott

SURVEY OF Lots - 12 - 13 Blks
Terry alex Sub.

Showing The Imp-

This The 27-th day Feb. 1950
S. A. Colwell
Licensed State Land Surveyor

EL PASO, TEXAS Feb. 27 1950
S. A. Colwell
LICENSED STATE LAND SURVEYOR

NOTE
REPRESENTS
STAKE
IRON
MONUMENT

| | PROPERTY GRADES | | | | |
|---|---|---|---|---|---|
| POINT | ELEV. | GRADE | CUT | FILL | |
| | | | | | |
| | | | | | |

House

House

Rooms

Rooms

ST John Rd

Blk 5

11

12

13

14

S 82°28'E 125

S 57°46'W 54.9'

S 54°04'W 26.6'

Easement +5'

S 82°34'W 51.3'

S 54°38'E 185.49'

N 54°03'E 188.67'

N 54°03'E 180.8½'

S 5°03' Curve cord 54.93

S 5°03' Curve cord 54.23

"13. The Defendants Chanoux never intended to buy or have the garage of their neighbors, nor any land except that which lies within the marked boundary walls of their .premises, which premises they occupied for two months prior to the conveyance, and for ten months thereafter, without claiming their neighbor's garage, or. the use or possession of any land without their boundary walls, all parties assuming that, in accordance with the survey, said walls correctly marked the limits of the property.

"14. The Deed from Plaintiff to Defendants Chanoux contained no reference to the boundary wall or the improvements on Lot No. 12 in said Block 5, Terry Allen Addition, but the parties, Plaintiff and Defendant believed at the time of the execution, delivery and acceptance of the Deed, that the boundary wall on the ground was on the boundary line between said Lots 12 and 13 in said Block 5 of the Terry Allen Addition, on file in the Front of Book 573 of the Deed Records of El Paso County, Texas."

His Conclusion of Law No. 2 is as follows: "2. The inclusion of lands lying without the boundary walls of the premises. at 1622 St. John Road in the Deed and Deed of Trust was the result of mutual mistake, the Plaintiff not intending to convey them, and the Defendants Chanoux not intending to acquire them, each party assuming that the boundary walls correctly marked the limits of the property."

Appellant's points are sufficient to present the legal proposition that under the undisputed evidence the court was not justified in reforming the deed on the ground of mutual mistake of the parties thereto. No question of fraud is involved.

We have concluded that the judgment cannot be sustained, for two reasons. First, the court's findings and the uncontroverted evidence show beyond question that at the time appellant John W. Chanoux signed the earnest money contract on July 2, 1949, he had never seen the property, therefore at that time he could not have intended to buy only the land which lay within the marked boundary walls of lot 12. We construe finding No. 13 as including no such finding. There is no question but that the legal description contained in the deed substantially conformed in all respects with that contained in the contract. Had the mistake been discovered prior to the execution and acceptance of the deed by the Chanoux and appellee had sought to reform the contract on the ground of mutual mistake and specifically enforced it against John W. Chanoux, it could hardly be urged with any plausibility that such an action could have been maintained since there was no mistake on the part of this appellant in the description of the land inserted in the contract. The deed merely carried into effect the legal obligation created by the contract. Certainly this appellant was entitled to insist that it conform in all respects with the contract, even though at the time of its execution and acceptance by him he had seen the property and "never intended to buy or have the garage of their neighbors nor any land except that which lies within the marked boundary walls of their premises", as found by the court. Therefore, since the contract could not have been reformed on the ground of mutual mistake against John W. Chanoux, one of the parties thereto, and specifically enforced, it is our view that the deed which merely put into effect the legal obligation created by it cannot be reformed on the ground of mutual mistake against John W. Chanoux.

See as having some bearing on this proposition, though not squarely in point: Dale v. Simon, Tex.Civ.App., 248 S.W. 703, loc. cit. 709(3), affirmed Tex.Com.App., 267 S.W. 467, loc. cit. 471(5) ; Ann. 28 L. R.A.,N.S., 813, loc. cit. 814, citing Dickinson v Glenney, 27 Conn. 104; Ann. 149 A.L.R 749, citing and quoting from Webster v. Sark, 10 Lea, Tenn., 406, loc. cit. 414.

For a more cogent, authoritative and compelling reason we think the judgment cannot be sustained. In Sun Oil Co. v. Bennett, 125 Tex. 540, 448, 84 S.W.2d 447, Commissioner Smedley, now Associate Justice, wrote the opinion of the Commission of Appeals which was adopted by the

Supreme Court. The facts were that in an oil and gas lease a 42 acre tract was particularly described by metes and bounds, but the lease contained the following clause: "'It being the intention, however, of lessor to include within the terms of this lease not only the above described land, but also any and all other land owned or claimed by lessor in said survey or surveys in which the above described land is situated or in adjoining surveys and adjoining the above described land.'" 84 S.W.2d loc. cit. 448.

Reformation was sought by the lessors on the ground of mutual mistake. The following issue which was answered in the negative, was submitted: "Do you find, from a preponderance of the evidence that it was mutually intended and agreed between Malinda Schuyler and J. H. Liles that the lease which was executed by Malinda Schuyler and Horace Schuyler in favor of the Sun Oil Company should cover and affect the 2.59 acre tract in question? Answer 'Yes' or 'no.'" 84 S.W.2d loc. cit. 450.

Commissioner Smedley said:

"For another reason, it is our opinion that the issue and answer do not constitute a finding of mutual mistake which could serve as the basis for reformation of the lease. In a case where the agreement of the parties has been reduced to writing and the effort on the part of one of them is to avoid on account of mistake the effect of a part of the written agreement, the mistake from or on account of which relief is sought is the incorporation in the agreement of terms or conditions not representing the true agreement of the parties. What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the true agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. *He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake.* Waco Tap. R. Co. v. Shirley, 45 Tex. 355; Moore v. Giesecke, 76 Tex. 543, 547, 13 S.W. 290; Kelley v.

Ward, 94 Tex. 289, 60 S.W. 311; Clemmens v. Kennedy (Tex.Civ.App.) 68 S.W. 2d 321 (application for writ of error refused); Lane v. Urbahn (Tex.Civ.App.) 265 S.W. 1063; Dalton v. Dalton (Tex. Civ.App) 143 S.W. 241; Litteral v. Bevins, 186 Ky. 514, 217 S.W. 369.

*"When once negotiations have ripened into a written instrument executed by the parties, and the instrument is plain and unambiguous, the agreement and the intention of the parties, in the absence of fraud, accident, or mutual mistake, are to be determined by the court as a matter of law.* Sun Oil Co. v. Burns, (Tex.Com.App. [125 Tex. 549]) 84 S.W.2d 442, this day decided, and authorities there cited; Graham's Estate v. Stewart, (Tex.Civ.App.) 15 S. W.2d 72 (application for writ of error refused) and authorities there cited. The question submitted to the jury was whether it found from a preponderance of the evidence that the parties mutually intended and agreed that the lease should cover and affect the tract in controversy. *This is not a submission of the true issue, namely, whether the clause of the lease with respect to adjoining land was embodied in the instrument through mutual mistake.*

The jury's answer means either that it invaded the province of the court and determined the intention and agreement of the parties by construing the lease or that, without finding that the clause appeared in the lease through mutual mistake, it merely undertook to determine from all of the evidence in the case what the parties intended and agreed. *However the issue and answer are viewed, they cannot reasonably be construed as equivalent to a finding that the language manifesting the intention to include adjoining land was incorporated in the lease as the result of a mutual mistake of the parties."* (Emphasis ours.)

The court reversed that part of the judgment which reformed the lease and rendered judgment for the Sun Oil Company. This case has been many times cited and its controlling authority never questioned. See Jones v. Sun Oil Co., Tex.Civ.App., 110 S.W.2d 80; (wr. ref.); Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582,

585, (Com.App. op. adopted), where Commissioner Taylor used this language: " * * * where a suit is for reformation there must be a finding upon evidence that is 'clear, exact, and satisfactory' that the mistake of fact was mutual; also, as stated in the same case, that the party seeking reformation must prove by such evidence not only 'what the true agreement was,' but 'must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake.'" Kennedy v. Shipp, Tex. Civ.App., 135 S.W.2d 204, wr. dis. judgment correct; Callihan v. White, Tex.Civ. App., 139 S.W.2d 129; Cox v. Shannon, Tex.Civ.App., 141 S.W.2d 412, wr. dis. judgment correct; West American Ins. Co. v. First State Bank of Rio Vista, Tex. Civ.App., 213 S.W.2d 298; Hayman v. Dowda, Tex.Civ.App., 233 S.W.2d 466.

We have quoted copiously from Sun Oil Co. v. Bennett because we believe it is applicable and controlling here. We construe the court's conclusion of Law No. 2 as not comprehending a finding that the land in controversy was included in the deed by mutual mistake of the parties thereto. If it may be construed as including such a finding it is entirely without support in the evidence. The deed was drawn by the Mortgage Investment Company, not by any of the parties thereto. The land therein described is the land specified by the earnest money contract. There is not a scintilla of evidence that the description which embraced the land in controversy was inserted by the mistake of any one. Accordingly, the judgment of the trial court is reversed and judgment here rendered that appellee Mesa Corporation take nothing against appellants.

Reversed and rendered.

### On Appellee's Motion for Rehearing.

PRICE, Chief Justice.

Careful and painstaking consideration has been given to appellee's motion for a re-hearing herein. The deed in question was executed by appellee in fulfillment of a written contract. The description in the deed substantially conformed to the description in the contract. The written contract covered all of lot 12.

In order to establish a right to reform this deed it is incumbent on appellee to establish first, that the true contract was that defendants were to buy and plaintiff to sell only a part of said lot 12; second, that through mutual mistake the property was described in the contract and conveyance as all of lot 12 instead of only a portion thereof. Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582.

The written contract evidences the legal right of the appellant to all of said lot 12. Lacking in the record is any evidence that at the time Chanoux signed the contract he thought he was getting less than all of lot 12. A mere unexecuted intention to waive rights under the contract on the part of said appellant would not entitle appellee to reformation of this instrument and recovery of land theretofore conveyed to appellant. The relevant time of the mistake was on the making of the contract.

The motion for rehearing is in all things overruled.

### On Appellee's Second Motion For Rehearing.

It is with some hesitancy that we write on appellee's second motion for a re-hearing. Our only justification for so doing is to the end that we may perhaps clarify the views we hold as to this case.

In substance it was stated in the original opinion that unless a mutual mistake existed at the time of the execution of the contract between the parties, then appellee should carry out its legal duty and is not entitled to assert a mutual mistake at the time of the execution of the deed. Cleghorn v. Zumwalt, 83 Cal. 155, 23 P. 294.

This written contract evidenced the express mutual assent of the parties thereto to the terms thereof. Prior to the execution thereof there is no evidence that appellant John W. Chanoux ever talked with any officer or agent of appellee. Appellee contends the real meeting of the minds of the parties was not as to lot 12

but only as to a portion thereof. The evidence shows appellant never saw the property before he signed this contract. The evidence fails to show that he had a photograph of the property or description of same other than as to lot 12. Never having seen the property, can it be said he assented to take a piece of property other than lot 12? There being no prior oral agreement that Chanoux was to take anything other than lot 12, in our opinion it cannot be logically said that he mistakenly believed that the description lot 12 described something less than lot 12 as it actually existed.

Appellant's second motion for rehearing is in all things overruled.

McGILL, Justice (concurring).

The question that has given me most concern in this case is whether we were correct in rendering judgment against appellee or whether the case should have been remanded for a new trial.

There is no question but that the case was tried in the trial court and briefed in this court on a theory entirely different from the basis of our decision. The theory of the trial court, as appears from his findings and conclusions, was that a case for reformation was made when it was shown that the true agreement of the parties did not embrace all of the land described in the deed. As pointed out in our original opinion in Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, the Supreme Court held this is not enough, but that the parties seeking reformation must go further and establish the fact that the terms or provisions of writing which differ from the true agreement made were placed in the instrument by mutual mistake. This court is authorized upon reversal to render judgment where a case has been tried upon the wrong theory only when the record discloses that the complaining party would not have been able to recover had the case been tried on the right theory. Benoit v. Wilson, Tex.Sup., 239 S.W.2d 792.

After mature reflection I have reached the conclusion that our original disposition was correct. If our decision were based solely on the rule enunciated in Sun

Oil Company v. Bennett, supra, then it would follow, I think, that the cause would have to be remanded to afford appellee an opportunity to prove and obtain a finding, if it can, that there was a mutual mistake of the parties in inserting in the deed a description which embraced more land than they had mutually agreed was the subject matter of the sale; but our disposition is not grounded solely on the rule of Sun Oil Co. v. Bennett. The other ground is amplified in the foregoing opinion by the Chief Justice. Believing this ground to be sound, I see no possibility under this record of appellee ever being able to establish any mistake on the part of appellant John W. Chanoux as to the description of the land inserted in the earnest money contract. This phase of the case has been fully developed and there is nothing to be gained by a further trial thereof. Rogers v. Blake, Tex.Sup., 240 S.W.2d 1001; London Terrace, Inc. v. McAlister, 142 Tex. 608, 180 S.W.2d 619.

I concur in overruling appellant's second motion for a rehearing.