**CONTINENTAL OIL COMPANY, Petitioner,**

v.

**William DOORNBOS et al., Respondents.**

**No. A–10638.**

Supreme Court of Texas.

April 27, 1966.

Rehearing Denied June 8, 1966.

Thomas D. Montgomery, Fort Worth, Orgain, Bell & Tucker, Beaumont, for petitioner.

W. O. Bowers, Jr., Beaumont, Williams, Lee & Lee, Thomas H. Lee, Houston, for respondents.

NORVELL, Justice.

The Doornbos plaintiffs (William Doornbos and others, successors in interest to C. Doornbos) sought, among other things, a declaration that a certain deed executed by Continental Oil Company to A. R. McElreath and F. W. Suggett, dated January 26, 1943, conveyed no more than a one thirty-second royalty interest in the minerals underlying the lands described in such deed. They further prayed that a deed executed by Continental Oil Company

to C. Doornbos on April 23, 1945, be reformed. The trial court decreed that the Doornbos plaintiffs take nothing against the McElreath-Suggett defendants but reformed the Continental-Doornbos deed. Continental appealed from the latter portion of the judgment, but no appeal was perfected from that portion of the judgment relating to the Continental-McElreath-Suggett conveyance. The Court of Civil Appeals affirmed. 386 S.W.2d 610. We reverse and here render judgment that the Doornbos plaintiffs take nothing against Continental. The trial court's judgment construing the Continental-McElreath-Suggett deed and in effect decreeing that the Doornbos plaintiffs take nothing against the McElreath-Suggett defendants is left undisturbed.

A statement of the history of the title to the property involved is essential to a proper understanding of our holding.

On January 25, 1943, the San Antonio Loan and Trust Company conveyed to Continental Oil Company a tract of 1842.5 acres which embraces the property now in dispute. The San Antonio Loan and Trust Company retained a perpetual royalty interest of $\frac{1}{32}$ of all oil, gas and other minerals produced and saved from the premises. Thereafter, on January 25, 1943, Continental Oil Company executed two deeds, one to Butcher Arthur Company conveying a $\frac{1}{32}$ royalty interest, and the other to A. R. McElreath and F. W. Suggett conveying "an undivided one-fourth ($\frac{1}{4}$) of all the oil royalty, gas royalty and royalty in casinghead gas, gasoline and royalty in other minerals" that might be produced from the premises.

On April 23, 1945, Continental Oil Company conveyed the property to C. Doornbos, excepting the royalty interests above set out and reserving to the grantor, Continental Oil Company, an additional $\frac{1}{32}$ royalty interest. On the dates above mentioned, the property was not covered by a mineral lease.

The Continental-Doornbos conveyance as written did not expressly provide that the grantee, C. Doornbos, should receive all royalties in excess of one-eighth of the oil, gas and other minerals which might be produced from the land. However, the trial court reformed the conveyance so as to place this provision in the deed and subordinate the Continental reserved $\frac{1}{32}$ royalty interest thereto.

The trial court's decree contained the following provisions:

"[It] is specifically decreed that the deed from said defendant Continental Oil Company to C. Doornbos (from and under whom the plaintiffs herein have title) dated the 23rd day of April, 1945, recorded in the Deed Records of Jefferson County, Texas, in Vol. 577, page 591, be and the same is here now amended and reformed to contain language conveying, and to include express words of conveyance, to C. Doornbos as of its date all of the oil royalty, gas royalty and royalty in other minerals over and above and in excess of one-eighth royalty, except said plaintiffs under this decree do not recover and shall not be entitled to any part of:

"*Exception One:*

"One-thirty-second ($\frac{1}{32}$nd) royalty reserved by San Antonio Loan and Trust Company in its deed to Continental Oil Company, dated the 25th day of January, 1943, * * *

"*Exception Two:*

"One-thirty-second ($\frac{1}{32}$nd) royalty conveyed by Continental Oil Company to Butcher-Arthur Company by deed dated the 26th day of January, 1943, * * *

"*Exception Three:*

"*One-quarter ($\frac{1}{4}$th) of all of the oil royalty, gas royalty and royalty in casinghead gasoline and royalty in other minerals conveyed by Continental Oil*

*Company to A. R. McElreath and F. W. Suggett by deed dated the 26th day of January, 1943, * * ***

*"Exception Four:*

*"Any royalty that may remain in Continental Oil Company by virtue of its attempted reservation of a one-thirty-second (⅟₃₂nd) royalty interest in its said deed to C. Doornbos, Defendant Continental Oil Company to own such interest, if any, as may remain after the satisfaction of the three (3) royalty interests set out above in Exceptions One, Two and Three and after the satisfaction of Continental Oil Company's grant to C. Doornbos of all royalty over and above a one-eighth (⅛th) royalty.*

"That said deed from Continental Oil Company contains this language,

"'* * * there is excepted from the interest herein conveyed and is reserved to Continental Oil Company, its successors and assigns, a perpetual royalty in fee of ⅟₃₂nd of all of the oil, gas, casinghead gas and all other minerals in and under a⁻d which may be produced from the above described land, said ⅟₃₂nd of the gross production from the above described land to be delivered to Continental Oil Company its successors and assigns, or to its or their credit in the pipe line serving said property, free and clear of all costs of prospecting, drilling, producing, saving and marketing, whether the same is produced by Grantee, his heirs, successors or assigns or by any lessee, holding under Grantee, his heirs, successors or assigns, Continental Oil Company, its successors and assigns do not reserve any right to participate in the making of any lease covering the mineral interests in the above described land, nor shall it or they be entitled to any part of the bonus or the delay rentals under any such lease. * * *',

*which said language is or may be in conflict with and repugnant to the grant to C. Doornbos of all royalty over and above and in excess of one-eighth (⅛th) royalty in accordance with said deed as same is reformed and amended by this decree, said reservation insofar as it does or may conflict with the grant of all royalty over one-eighth (⅛th) royalty to C. Doornbos is wholly void and of no effect to the extent of such conflict."*

The terms of the San Antonio Loan and Trust Company reservation and the Butcher-Arthur and McElreath-Suggett grants are correctly set forth in the decree. We have italicized the exception relating to the conveyance to McElreath and Suggett because the peculiar wording of this conveyance is the basic circumstance which gave rise to this lawsuit. This conveyance did not call for a one thirty-second royalty interest, but for one-fourth of all oil, gas and casinghead gas royalty and was so construed by the trial court. Such interest would amount to a one-thirty-second royalty interest only if the basic royalty in the lease under which oil and gas were produced provided for the usual one-eighth royalty.

The decree also correctly sets forth the terms of the Continental reservation contained in its 1943 deed to Doornbos. This reservation as contained in the deed was unconditional. The reformation decree subordinated this reservation to the Doornbos claim that C. Doornbos and his successors in interest were entitled to receive all royalty interests over and above a one-eighth. We have also italicized this portion of the decree.

The problem becomes clearer by pointing out the allocation of the royalty interests under the deed as actually written and comparing the same with the allocation provided for by the decree of the court which inserted the subordination clause above mentioned.

During the 1950s, C. Doornbos or his successors in interest negotiated a number of leases covering the property in which the base royalty provided for was in excess of one-eighth, namely, one-sixth, one-fifth and one-fourth. The Continental-Doornbos deed as written would provide for the following division of the royalty interests:

| Royalty reserved in lease | San Antonio Loan & Trust | Butcher-Arthur | McElreath-Suggett | Continental | Doornbos |
|---|---|---|---|---|---|
| one-sixth | 1/32 | 1/32 | 1/24 | 1/32 | 1/32 |
| one-fifth | 1/32 | 1/32 | 1/20 | 1/32 | 9/160 |
| one-fourth | 1/32 | 1/32 | 1/16 | 1/32 | 3/32 |

The reformation of the Continental-Doornbos deed would have no effect upon the royalties to be paid San Antonio Loan and Trust Company, Butcher-Arthur or McElreath-Suggett (or their successors in interest), but would operate to cut down the Continental royalty interest and increase that of Doornbos in the following manner:

| Royalty reserved in lease | San Antonio Loan & Trust | Butcher-Arthur | McElreath-Suggett | Continental | Doornbos |
|---|---|---|---|---|---|
| one-sixth | 1/32 | 1/32 | 1/24 | 1/48 | 1/24 |
| one-fifth | 1/32 | 1/32 | 1/20 | 1/80 | 3/40 |
| one-fourth | 1/32 | 1/32 | 1/16 | none | 1/8 |

Both Continental and Doornbos construed the deed from Continental to McElreath and Suggett to convey a one-fourth of a conventional one-eighth royalty, which would be a 1/32nd royalty interest. This may be considered a mistake of law but its result was to cause both parties to mistakenly assume that Continental could reserve a 1/32nd royalty interest and that Doornbos would then receive all the royalty provided for in a lease which he might negotiate calling for a royalty in excess of a one-eighth. There was no agreement made which would subordinate the reserved 1/32nd Continental interest to the grant of a royalty interest of all above one-eighth to Doornbos, as provided for in the decree of the trial court in the second italicized paragraph above set out.

By Count V of their petition, the Doornbos plaintiffs sought reformation of the deed to include therein an express provision granting all royalty in excess of one-eighth. By Count VI they sought a declaration that the 1/32nd royalty reserved to Continental was void to the extent that it was repugnant to or in conflict with the reformed grant to Doornbos. The effect of a judgment declaring the 1/32nd reserved royalty void to any extent would, of necessity, reduce the royalty reserved in some situations. Thus, under guise of seeking a construction of the deed and a declaration of the rights after reformation in one respect, the plaintiffs were actually seeking, and the judgment actually grants, reformation of the deed in two respects—to include in the deed an express provision granting to Doornbos all royalty in excess of one-eighth and a provision reducing the 1/32nd royalty reserved to Continental when necessary to assure that Doornbos would get all royalty in excess of one-eighth. There

is no evidence in the record that any such agreement was made or was omitted from the deed by mutual mistake.

 It is basic to the remedy of reformation that the true agreement between the parties be shown. Sun Oil Company v. Bennett, 125 Tex. 540, 84 S.W.2d 447 (1935); Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582 (1939); Burrows v. Seale, 148 Tex. 411, 225 S.W.2d 966 (1950). Once such agreement be established, equity may reform the written instrument so as to conform thereto, but cannot create and bring into being an agreement not made by the parties. The parties here agreed that Doornbos should have all the royalty over one-eighth. They also agreed that Continental should retain a ½₂nd royalty interest. But, as above pointed out, they never agreed that the Continental reserved interest should be subordinated to the interest conveyed to Doornbos. The subordination portion of the trial court's decree purports to rest on the rule of construction announced in Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940). The results of the judgment are achieved by switching from equitable principles of reformation to legal rules of construction half way through the solution of the controversy, so to speak. The Duhig rule is to be applied to ascertain the meaning of an instrument in the absence of an appeal to equity. When reformation is sought, the oral agreement preceding the written instrument is treated as the binding contract and the written instrument made to conform thereto. Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582 (1939). A provision not contained in the preceding oral agreement cannot be inserted in the reformed written agreement under the guise of reformation. While the circumstances of this case may have at one time served as a basis for rescission or other remedy, they do not present a case for reformation.

The construction of a deed containing a reservation repugnant to a grant, and in which the reservation must yield to the grant, is not involved here. This is a case in which the plaintiff seeks by reformation to increase the interest actually granted and to reduce proportionately the interest reserved to the grantor. There is no evidence of any such agreement and, accordingly, reformation is denied.

Judgment is here rendered as above stated.