ZURICH INSURANCE COMPANY,

v.

Ernest I. BASS, Appellee.
Appellant,

No. 17315.

Court of Civil Appeals of Texas.

Dallas.

June 27, 1969.

Larry L. Gollaher, of Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellant.

George M. Elliott, of Brown, Elliott, Brown & English, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal by Zurich Insurance Company, hereinafter called Zurich, from a judgment for $700 in favor of appellee Ernest I. Bass on a "Texas Standard Policy" for fire insurance.

In an amended petition and a trial amendment Bass alleges that under the terms of the "Dwelling Extension" provision of the policy he is entitled to recover 10 per cent of the face amount of the policy following a fire which damaged a barn located on his property. In the alternative he alleges that if the barn was not covered under the terms of the "Dwelling Extension" provision the failure to cover it was due to mutual mistake and he asks for reformation of the insurance contract. Also in the alternative Bass pleads that Zurich has waived, or is estopped from, asserting or relying on any condition embodied in the "Dwelling Extension" paragraph of the policy. He did not plead fraud or accident in connection with the issuance of the policy, or its terms.

The trial court rendered judgment reforming the policy to include coverage of the barn on the grounds of mutual mistake, waiver and estoppel.

## FACTS

Prior to April 1, 1964 Bass purchased rental property in Dallas, Texas, known as 8602 South Polk Street. Situated on the property are a house and some out-buildings, including a barn. At the time Bass was in the real estate business working in the office with Dean Miles, who did business as a real estate and soliciting insurance agent. Bass applied to Miles for a fire insurance policy on his Polk Street property.

Miles took a written application from Bass and obtained a fire insurance policy through "The Frampton Agency," recording agent for Zurich. Bass says that at the time he applied for the policy he asked Miles if it would cover the out-buildings and that Miles told him it would "cover the outbuildings up to ten per cent of the face of the policy." The original policy was sent at Bass' request to a Mrs. Johnson, who held a mortgage against the property.[1]

The policy in question is in the face amount of $7,000. It describes the property insured as follows: " * * * One composition asbestos siding building * * Tenant Dwelling."

The paragraph in the policy designated as "Dwelling Extension" is as follows:

"At the option of the insured, insurance on a dwelling may be extended as excess insurance to the fences, drives, walks, yard fixtures, private garages, servants' houses, and, *if used solely in connection with the occupancy thereof, other out-buildings on the premises of the dwelling*, to the extent of their respective actual values, but the aggregate of such extension shall not exceed 10% of the amount of insurance on such dwelling." (Emphasis ours.)

A fact which is material to the outcome of this litigation is this: the dwelling and the barn on the premises were rented separately to different tenants. The barn was not used "solely in connection with the occupancy" of the dwelling.

---

1. By the time of the trial Bass had paid the mortgage in full and the property was clear of indebtedness.

Another material fact—one which the parties stipulated—is that Dean Miles, the soliciting agent, was not told and he did not know that the barn and the dwelling had been separately rented to different tenants.

On or about January 25, 1965 a fire damaged but did not destroy the barn. The parties stipulated that the cost of repairing the barn would be $1,648.02. Based on the "Dwelling Extension" provision of the policy, Bass presented a claim of $700, being 10 per cent of the face of the policy. Zurich refused payment on the ground that under the terms of the policy there was no coverage on the barn.

It is undisputed that the property damaged by fire in this case was not a fence, drive, walk, yard fixture, private garage, or servant's house, within the terms of the policy. It is also undisputed that the barn in question was not an out-building "used solely in connection with the occupancy" of the dwelling which was insured.

Frampton, Zurich's general agent, testified that under the circumstances in order to obtain coverage for the barn additional premium would have to be charged, or a separate policy issued. The trial court found that Bass would have procured other insurance had he realized that the policy did not in fact cover the barn.

Miles, though only a soliciting agent, was experienced in the insurance field. In fact he had formerly been a recording agent himself, but in 1963 had sold his agency to Frampton.

The trial court made twenty-nine findings of fact and ten conclusions of law. However, we shall not copy them in this opinion, as we have concluded that our decision is properly controlled by the undisputed evidence and the stipulated facts.

## OPINION

In its first point of error appellant Zurich asserts that the trial court erred in reforming the policy so as to cover the barn on the ground of mutual mistake as there was no definite and explicit underlying agreement and there was no evidence of mutual mistake. We agree with appellant.

■ For the remedy of reformation to be available on the ground of mutual mistake the parties must have reached a definite and explicit agreement, understood in the same sense by both, which agreement has been misstated in the written contract because of a mistake common to both contracting parties. There must have been a meeting of the minds of the parties. Champlin Oil & Refining Co. v. Chastain, 403 S.W.2d 376, 382–383 (Tex. Sup.1965). A mistake by one party coupled with ignorance thereof does not constitute mutual mistake. 76 C.J.S. Reformation of Instruments § 28, p. 366. Mutual mistake "is one common to both parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions * * * designed to embody such agreement." Eggert v. American Standard Life Ins. Co., 404 S.W.2d 99, 105 (Tex.Civ.App., Corpus Christi 1966, no writ); Lander Lumber Co. v. Williams, 250 S.W.2d 317, 319 (Tex. Civ.App., El Paso 1952, writ ref'd n. r. e.).

In Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, 451 (Tex.Com.App.1935, opinion adopted), it is said:

"What the parties mutually intended and agreed is not the vital inquiry. The party seeking reformation must of course prove what the agreement was, but his case is not made by proof that there was an agreement which is at variance with the writing. *He must go further and establish the fact that the terms or provisions of the writing which differ from the true agreement made were placed in the instrument by mutual mistake.*" (Emphasis ours.)

See also Chanoux v. Mesa Corp., 241 S.W. 2d 741, 746 (Tex.Civ.App., El Paso 1951, writ ref'd n. r. e.); Continental Southland Savings & Loan Ass'n v. Bunyard, 109

S.W.2d 276, 279 (Tex.Civ.App., Austin 1937, no writ); Camden Fire Ins. Ass'n v. Clay Lumber Co., 81 S.W.2d 211 (Tex.Civ. App., Eastland 1935, writ dism'd).

Applying the above principles to the undisputed facts of the instant case we have concluded that appellee is not entitled to reform the policy on the ground of mutual mistake. There was no meeting of the minds between Bass and Miles, the soliciting agent. They were not laboring under the same misconception respecting a very material fact: that the dwelling and the barn were separately rented to different tenants and the barn was not "used solely in connection with the occupancy" of the dwelling. Bass, the landlord, was well aware of the fact. But he did not tell Miles and it is stipulated that Miles had no knowledge of the fact. The trial court found that Miles, formerly a recording agent himself, was a man of "vast experience in the insurance field." Miles charged a lesser premium than he would have been compelled to charge had he known the facts. He referred to the "Dwelling Extension" by saying that outbuildings were covered up to 10 per cent of the face of the policy. There is no allegation, evidence or claim of fraud on the part of Miles. It is inescapable that Miles delivered the insurance policy he intended.

Appellee Bass relies on the holding of our Supreme Court in Fireman's Fund Indemnity Co. v. Boyle General Tire Co., Inc., 392 S.W.2d 352 (Tex.Sup.1965). But in our opinion the holding in the above case is not in point here for these reasons:

1. In the Fireman's Fund case the insurance agent had full knowledge of the material fact in question. He was told by Boyle that the insurance would cover the employees of a new company recently acquired by Boyle. The policy as issued did not cover the employees of the new company.

2. In the above case the plaintiff pleaded and proved fraud by the agent.

(See the Court of Civil Appeals opinion in this case in 381 S.W.2d 937.) It is well settled that when there has been a mistake by one party, accompanied by fraud of the other party the remedy of reformation is available. But in this case there are no pleadings, evidence, or claims of fraud on the part of Miles, or the insurance company or any of its agents.

Appellant's first point is sustained.

In its second point of error appellant Zurich says that the court erred in extending the terms of the policy to include the insured's barn by waiver or estoppel, since sale doctrines cannot be used to enlarge the risks covered. Again we agree with appellant.

Waiver is the voluntary relinquishment of a known right. As stated before, the parties stipulated that Miles, the soliciting agent, was not told and did not know that the barn was not used solely in connection with the occupancy of the dwelling. There is no evidence that Frampton, the recording agent, or any other agent of appellant's had knowledge of the fact. In the absence of such knowledge neither waiver nor estoppel is applicable in this case. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 (1958); Hallmark v. United Fidelity Life Ins. Co., 155 Tex. 291, 286 S.W.2d 133, 136 (1956); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); Texas Osage Cooperative Royalty Pool v. Colwell, 205 S.W. 2d 93 (Tex.Civ.App., Amarillo 1947, writ ref'd n. r. e.); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed. 2d 1094 (1967).

An insurance company may waive a forfeiture provision in a policy, or be estopped to assert it; but neither waiver nor estoppel may operate to change, rewrite, or enlarge the risk covered by the policy, or to create and bring into being a different contract from that stated in the policy. Finger v. St. Paul Fire and Marine Ins. Co., 423 S.W.2d 460 (Tex.Civ.App.,

Houston 1968, writ ref'd n. r. e.); Scott v. Industrial Life Ins. Co., 411 S.W.2d 769, 774 (Tex.Civ.App., Dallas 1967, no writ); Continental Oil Co. v. Doornbos, 402 S.W. 2d 879, 883 (Tex.Sup.1966); Greàt American Reserve Ins. Co. v. Mitchell, 335 S.W. 2d 707 (Tex.Civ.App., San Antonio 1960, writ ref'd); Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854 (1937).

▇▇▇ In his argument under his second point appellee Bass undertakes to excuse his failure to read his policy and so to inform himself of the policy's terms in regard to out-buildings. He points out that the policy was not sent to him, but was sent to Mrs. Johnson, the mortgagee. Only a certificate was sent to Bass and the certificate made no reference of any kind to out-buildings.

We do not believe appellee's excuse is valid. The policy was sent to Mrs. Johnson at appellee's own request. The fact that the certificate which he received, and which he did read, was silent as to out-buildings certainly was a good reason for him to check the policy to make sure of its terms. Mrs. Johnson, the mortgagee, was also appellee's first tenant in the dwelling. As her landlord appellee surely was in communication with Mrs. Johnson and could have looked at the policy had he so desired.

Appellee Bass again cites the opinion of our Supreme Court in Fireman's Fund Indemnity Co. v. Boyle General Tire Co., Inc., 392 S.W.2d 352 (Tex.Sup.1965), in which an insured was held to be entitled to reformation though he had not read the policy in his possession. We do not believe that the holding in *Boyle* in that respect is applicable here for these reasons:

1. We repeat that fraud or accident is not an issue in this case. Appellee Bass does not claim fraud on the part of Miles. In *Boyle* fraud was an issue. The agent knew the facts, but caused a policy to be issued contrary to his promise and his knowledge of the facts. It is understandable that the law will not protect an agent who fraudulently lulls his victim into a false sense of security then seeks to avoid liability though nothing untoward has occurred to arouse the suspicion of the defrauded party.

2. As we have held in sustaining appellant's first point on appeal, this is not a case involving mutual mistake. It is undisputed that appellee Bass knew the facts but it is stipulated that Miles, the agent, did not know the facts. Whether the failure of Bass to read the policy was excusable on the ground of mutual mistake we need not decide since mutual mistake is not in the case.[2] Continental Oil Co. v. Doornbos, 402 S.W.2d 879, 882–883 (Tex.Sup.1966).

We sustain appellant's second point.

In its third point Zurich complains because the trial court placed the burden of proof on the insurer to show the exact amount of the additional premium required under the insurance policy as reformed. In view of our sustaining appellant's first and second points we deem it unnecessary to pass on the third point.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by his suit.

---

2. It is interesting to note that in the three cases cited in *Boyle* the agent either knew the facts, or fraud or mutual mistake was found, supported by evidence of probative force. Cranfill-Reynolds Co. v. Security Ins. Co., 67 S.W.2d 258, 259 (Tex.Com. App.1934); Aetna Ins. Co. of Hartford, Conn. v. Brannon, 99 Tex. 391, 89 S.W. 1057, 2 L.R.A.,N.S. 548 (1905); Kelley v. Ward, 94 Tex. 289, 60 S.W. 311 (1901).