HAYMAN et al. v. DOWDA et al.

No. 15181.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 6, 1950.

Rehearing Denied Nov. 10, 1950.

Donald & Donald, of Bowie, for appellant.

Steele, Daugherty & Downey, of Tulsa, Okl., and Harrell & Harrell, of Breckenridge, for appellees J. H. Boyle et al.

SPEER, Justice.

This appeal grew out of a cross action among defendants after this court construed certain conveyances of mineral rights in a described 320 acres of land in Young County, Texas. We reversed the judgment then before us and remanded the cause. See Dowda v. Hayman et al., Tex. Civ.App., 221 S.W.2d 1016, writ refused.

At the second trial the pleadings were amended and in so far as is necessary to here state eight of the twenty or more heirs of J. J. and E. A. Hayman, both deceased without wills or administration (and because of different relationships the respective interests were not the same), filed a cross action against a co-defendant, J. H. Boyle (not an heir, but to whom some cross plaintiffs and guardians of others had previously made conveyances of mineral rights), seeking reformation of such conveyances on account of alleged mutual mistakes of the parties and the scrivener who wrote the documents.

All defendants answered the original plaintiff Dowda's suit to quiet his title to the entire surface rights and his one-half interest in all the mineral rights, pleading the general issue requiring Dowda to prove his claims.

Sam Hayman, a son, joined by six other defendants, who were grandchildren of J. J. and E. A. Hayman, both deceased, with varying interests, plead in a cross action against J. H. Boyle, a co-defendant in the main suit, for reformation of the conveyances under which the cross defendant Boyle held, based upon mutual mistake in each instance. Apparently the controversy lies in the fact that each of the sons and daughters of J. J. Hayman and E. A. Hayman thought they owned a 1/14th interest in the mineral rights, but under our construction of the conveyances, Tex.Civ.App., 221 S.W.2d 1016, they owned only a 1/16th interest. Cross defendant Boyle had purchased from cross plaintiffs and their ancestors fractional parts of a 1/14th interest. The cross action was to reform the conveyances to cross defendant so as to give him the agreed fractional interests in a 1/16th interest instead of the fractional interest in a 1/14th interest.

Trial was to the court without a jury. No findings of fact and conclusions of law were requested and none on the controverted issues were filed. In the judgment entered the court did recite several findings of fact but each was an uncontroverted one. Such findings were obviously made for clarity of the court's final conclusions expressed in the judgment. The judgment then, with meticulous care, awards the mineral rights one-half to the original plaintiff Dowda and the remaining one-half, in fractional parts, to twenty-eight heirs and to Boyle and his grantee, E. I. Hanlon, all of whom were parties to the original suit. The fractional interest so awarded among the defendants ranged from a 1/16th, the greatest, to 1/336th, the lowest interest. No direct reference was made in the judgment to cross plaintiff's plea for reformation of the instruments, other than to recite " * * * that all pleas for affirmative relief which are not herein expressly granted are hereby expressly denied." The effect of the interest awarded to each party was to deny cross plaintiffs a reformation. After the court overruled cross plaintiffs' motion for new trial predicated upon "newly discovered evidence," this appeal was perfected by them. No attack is made upon the judgment other than its relation to the cross action.

Fourteen points of assigned error are relied upon. Nos. 1 to 7, 10, and 11, in so many different ways, complain because the court refused to reform certain instruments executed to cross defendant Boyle by appellants and their ancestors. Appellants contend under these points that Boyle, acting through his agent, one Meredith, and appellants Hayman and Adair were all mistaken as to the interest cross plaintiffs and their ancestors had in the mineral rights conveyed and that appellants and Meredith thought each son or daughter owned a 1/14th interest; that Meredith agreed to buy, and each agreed to sell, one-half of what he owned and that Meredith prepared the conveyances on the basis of each son and daughter of the deceased father and mother owning a 1/14th interest, when in fact they only owned a 1/16th

interest, all of which shows conclusively, they argue, that there was a mutual mistake in the preparation, execution and acceptance of the conveyances, and that the trial court erred in not so finding.

The mentioned points are overruled for several reasons. First, the contention that grantors and Meredith thought the sons and daughters each owned a 1/14th interest is not borne out by the testimony but the testimony is conclusively to the contrary. Sam Hayman, the only cross plaintiff who testified, said plainly, when asked what interest he thought he owned, that the title "was all messed up" and he did not know how much he owned and that Meredith did not tell him how much he owned but their agreement was that he would sell and Meredith would buy one-half of what he owned. Meredith testified he did not agree to buy a half interest, that he only agreed to buy a 1/28th interest; that he caused the conveyance to be written for that amount. That Sam Hayman executed the deed of conveyance on the day it was written, December 27, 1947, and that witness caused it to be sent to the home of Hayman on that day for the wife to sign; that he did not again see the instrument but that it showed on its face that she executed it before a notary public on December 29, 1947. Second, other parts of the testimony relied upon by appellants are very conflicting as well as the part just related. In fact, each witness made conflicting statements to other parts of his own testimony. Appellant Sam Hayman testified in effect, and was corroborated by his wife, that Meredith brought the conveyance to his home on December 27, 1947 (shown to be Saturday) and left it with them until the following Monday and that they went on Monday to Jacksboro and executed it and that Meredith came back and got it. Meredith denied coming back at that time or that he ever saw it after it was executed. There are parts of Hayman's testimony that clearly indicate that he did not execute the deed on Monday when his wife executed it. The conveyance was in evidence and it shows that Sam Hayman executed it on December 27, 1947, before Judge McClure as a notary public, and that the wife signed it on December 29, 1947, before a notary public at Newport near their home. The conveyance covered a 1/28th interest and in it there is a provision to the effect that future rentals on a 1/28th interest shall be paid to grantee. On the same day that Hayman signed the conveyance, he signed what may be termed a division order of the minerals, addressed to Sinclair Prairie Oil Co., advising, he had sold to J. H. Boyle "a 1/28th interest in wells Nos. 1 and up on the Dowda farm (describing the survey). You will therefore give credit for oil received from said interest as above. * * *" Meredith testified the conveyance was left with Judge McClure, whom he instructed, when executed, to send to J. H. Boyle with draft attached for $1500, payable to Sam Hayman, the amount he had agreed to pay Hayman for the 1/28th interest; Meredith repeated that he never at any time advised Hayman what interest he owned but that he knew he owned more than a 1/28th, otherwise he would not have bought that amount. The draft for $1500 was in evidence and Hayman identified his signature of endorsement. While testifying Hayman also read the typewritten part thereof, which recited that the amount was "for 1/28th mineral interest" in the survey here involved. Third, Mrs. Hayman testified that while the conveyance was in their home from Saturday until Monday, they did not read it and did not discuss it. There is no testimony from any source that Meredith or any other person ever at any time prevented or attempted to prevent them from reading and understanding the contents of the conveyance.

We have not attempted to point out all of the testimony before us but only enough to show that the trial court had before him hopelessly conflicting and irreconciliable testimony on the issues under discussion and to show that if he gave credence to that part against appellants, which he impliedly did, there is sufficient evidence of probative value to support the judgment in so far as these points of error are concerned, that is, there was no mutual mistake made in drafting the conveyances.

■ Each of the mineral deeds in controversy was plain and unambiguous; appellants do not claim otherwise. It is the accepted rule in such cases that all previous agreements between the parties have been incorporated therein and cannot be defeated absent a showing of fraud, inequitable conduct or mutual mistake. There are no allegations or evidence of fraud or inequitable conduct in this case but appellants rely alone upon mutual mistake. A presumption arose by the face of the conveyances that they represented the true contract made. The burden was upon appellants' to prove that the mistake was made and that it was mutual. 29 T.J., p. 718, sec. 12; 36 T.J., p. 779, sec. 35. In such circumstances the conveyances will not be reformed on account of mistake unless the mistake is mutual, that is, a mistake common to both parties, both laboring under the same misconception in respect to the terms of the instrument. St. Paul Fire & Marine Ins. Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100; 36 T.J., p. 746, sec. 17; 8 T.J., 10 year Supp., p. 575, sec. 17. "A unilateral mistake is not ground for affording relief to the party who was mistaken, where the other party in no way induced it." 36 T.J., p. 750, sec. 19, 8 T.J., 10 year Supp., p. 576, sec. 19.

■■ Under some conditions, proof of what the parties previously agreed upon is admissible but where their contract has been reduced to writing, is unambiguous and is sought to be reformed for mutual mistake, what the parties mutually intended prior to the execution of the instrument is not a vital inquiry. A party does not make out a case for reformation by proof alone of a previous agreement at variance with the writing but must establish that those parts in the instrument at variance with the agreement were inserted by mutual mistake. Kelley v. Ward, 94 Tex. 289, 60 S.W.2d 311; Clemmens v. Kennedy, Tex. Civ.App., 68 S.W.2d 321, writ refused. Substantially all of the issues raised by the points under discussion here were before the court, and determined against appellant's advanced theories, in Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447.

The last cited case has been followed many times according to Shepard's Citator.

■ It is the universally accepted rule of law in this state that where, as in this case, trial is had without a jury, the trial court determines the facts from a preponderance of the evidence, resolves the conflicts accordingly, and we must presume that he found the conflicting testimony in such way as to support the judgment he enters. As above indicated, we overrule points 1 to 7, 10 and 11.

■ Points 8, 9 and 12 challenge the action of the court in overruling appellants' motion for new trial on the ground of newly discovered evidence. The asserted "newly discovered evidence" consisted of a letter and telegram from Meredith to Mrs. Ethel Deal. The letter was dated November 11, 1947, and the telegram was dated April 15, 1948, in which Meredith proposed to buy all or half of her interest in the mineral rights. Mrs. Deal was a party cross plaintiff. The record does not disclose that she ever sold any interest to cross defendant. Her interest in the cross action is not disclosed. Her husband testified at the hearing on motion for new trial and said in effect that he was sick at the time of trial and could not attend court; no explanation was made as to why Mrs. Deal did not attend court. He further testified that his wife received the letter and telegram at about the dates they bore, had been mislaid and they did not find them until just before the motion was filed. Meredith was not asked, when on the stand at the trial, about the letter, telegram or ony other negotiations had with Mrs. Deal. It is argued by appellants' counsel that by the discovery of the letter and telegram it appears that Meredith did offer "to buy one-half of certain mineral rights from Mrs. Ethel Deal (one of the appellants) and therefore, it is shown that all deals were on the same basis." We cannot agree with the conclusions expressed by counsel. They also argue as a further reason why new trial should have been granted that the letter and telegram "impeached Meredith and corroborated Sam Hayman, Mrs. Irene Hayman and

Mrs. Opal Hayman." The letter and telegram do not impeach or even contradict the testimony of Meredith when he said he did not offer to buy a half interest from those who sold to him and whose conveyances were sought to be reformed. He did not testify about any purchase from Mrs. Deal; he could not be impeached on something about which he did not testify; nor did appellants testify about a sale by Mrs. Deal, hence the testimony did not corroborate them.

 Granting or refusing new trial for newly discovered evidence is vested by our law in the sound discretion of the trial court and unless such discretion is abused the appellate courts will not revise such act. 31 T.J., p. 91, sec. 82; 7 T.J., 10 year Supp., p. 587, sec. 82. The court's discretion in such matters extends to the diligence used to get the testimony before the court at the trial. It has been held that diligence has not been exercised if the same diligence used to procure the testimony subsequent to trial would have had the same result if exercised prior thereto. 31 T.J., p. 98, sec. 85, 7 T.J., 10 year Supp., p. 588, sec. 85; Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331, writ refused, n. r. e. We note from the record that the proposed testimony was in the possession of one of the cross plaintiffs but it had been mislaid. After a search since the trial it was found. Moreover, if cross plaintiff had been present at the trial she could have qualified and testified as to the contents of the lost instruments. No motion for postponement of the trial was made so she could be in attendance at court. Yet another element enters into the court's discretion, that is, would the judgment probably have been different if cross plaintiff had had "the new evidence" upon the trial? 31 T.J., p. 107, sec. 95. The court in the instant case had passed upon the facts as presented at the trial and at the hearing on the motion had before him the new evidence, and in overruling the motion he impliedly held, among other things, that his judgment would not have been different if it had been presented upon the trial. It has been held that newly discovered evidence which is cumulative of that already given or tends only to impeach the testimony of an adversary does not afford grounds for new trial. Vance v. Batterton, Tex.Civ.App., 187 S.W.2d 247, writ refused, w. m. We see no abuse of discretion and the points are overruled.

 By their 13th point appellants complain because the trial court sustained an objection by opposing counsel to Mrs. Irene Hayman's answering the question: "When he (Meredith) showed you that instrument (the mineral conveyance of the Sam Hayman 1/28th interest) and asked you to sign it, what did he represent or say that it covered?" Appellants excepted to the ruling of the court but did not inform the court what the testimony would have been if the witness had been permitted to answer. Immediately thereafter appellants' counsel asked the witness this question: "What did he (Meredith) say in reference to this matter to induce you to sign that instrument?" She answered: "Well, he said it was a showing that Mr. Hayman had sold half of what he had." An objection by appellee's counsel to the answer was renewed and overruled by the court. In the absence of a showing by appellants of what Mrs. Hayman would have answered to the first question it is quite obvious to us that appellants obtained the testimony they desired by the answer to the second question which the court admitted. We see no substantial error committed in excluding the testimony in the first instance when the court later admitted it.

 Fourteenth point assigns error of the court in admitting in evidence the draft for $1500 on appellee Boyle, payable to the order of Sam Hayman, with certain explanatory notations thereon, shown to be appellees' Exhibit No. 1, to which we have already referred.

In their brief appellants refer to the offending draft as cross defendant's "Exhibit No. 4." That exhibit was a draft on Boyle for $2057.14 payable to The Jacksboro National Bank containing memoranda concerning a conveyance of mineral rights by Lue and J. H. Martin to Boyle. If the arguments in the brief were intended to apply to Exhibit No. 1 (the $1500 draft payable to Sam Hayman as asserted in the

point of error, and we believe it was so intended), it presents no reversible error. We have pointed out above the undisputed fact that Sam Hayman endorsed and received payment of the amount recited therein while it bore the notations for which it was given, that is, for a 1/28th mineral interest in the involved 320 acre tract of land. The record shows conclusively that he could have read its contents at the time he endorsed it, inasmuch as he did correctly read it while on the witness stand. The exhibit was material to appellee for it showed he had paid that amount to Hayman for the 1/28th interest, all of which was plainly typewritten on the draft, and it must be inferred that Hayman had full and complete notice of its contents when he accepted, endorsed and cashed it. We think the paid draft, under the circumstances, was admissible in evidence and that no error is shown by the trial court so holding.

For the reasons stated, all points of error are overruled and the judgment of the trial court will be and it is affirmed.