Jerome I. **SOBEL**, d/b/a the Script Shop, Appellant,

v.

Raymond **JENKINS**, d/b/a Jenkins Auto Rental, Appellee.

No. 5018.

Court of Civil Appeals of Texas, Waco.

June 17, 1971.

Rehearing Denied July 8, 1971.

Edwards & Faulkner, Waco, for appellant.

Sheehy, Jones, Cureton, Westbrook & Lovelace, Waco, for appellee.

## OPINION

JAMES, Justice.

This is a suit for fraud allegedly arising out of the sale of an automobile. The jury findings were favorable to plaintiff-appellant Sobel, but the defendant-appellee Jenkins was granted a Judgment Non Obstante Veredicto by the trial court. From said judgment, Sobel prosecutes this appeal. For simplicity, the parties will be hereinafter called by their surnames.

886

On November 1, 1967, Sobel entered into a lease-purchase agreement with Jenkins, whereby Sobel leased a 1967 Volkswagen from Jenkins for twenty-four months at $55.00 per month with an option to buy at the end of that period of time for the price of $1675.00 less the $55.00 per month payments that had been made. Sobel made the lease payments in November, 1967, December, 1967, and January, 1968. The car was used as a delivery vehicle for Sobel's business, The Script Shop. Sobel had possession of the car during November, December and January except for a short period of time when the body was being repaired as a result of an accident. During this time Sobel and his employees put about 5000 miles on the car. A dispute arose concerning repairs to the starter of the car, and Jenkins filed a lawsuit against Sobel, same being Cause No. 56930 in the 19th District Court of McLennan County, Texas, styled, "Raymond Jenkins d/b/a Jenkins Auto Rental vs. Script Shop, et al." This styled and numbered cause is hereinafter referred to as "the former lawsuit." Sobel filed an answer and cross action in the former lawsuit, alleging among other things, paragraph 4a which reads as follows:

"The automobile leased to defendant and cross-plaintiff was not in the condition and usable for the purposes for which it was leased *and as represented by plaintiff and cross-defendant.*" (italics ours).

Jenkins had possession of the car from January, 1968, until October 14, 1968, when Jenkins transferred the title to Sobel. The transfer of title from Jenkins to Sobel came about in this manner: At the conclusion of the evidence in the former lawsuit, Sobel's attorney informed Sobel that the trial judge was going to hand down a directed verdict in favor of Jenkins. It appeared to Sobel and his attorney that he (Sobel) must decide whether to exercise his option to purchase the car or to continue leasing it. Sobel decided to purchase the car. Settlement was announced in open court in the former lawsuit by the attorneys, to the effect that Sobel agreed to pay $1650.00 in full settlement, and that Jenkins agreed to transfer the car to him. Announcement was also made in court that "both sides are released from any further action on the contract."

Thereafter, on August 13, 1969, Sobel sued Jenkins in the instant case, contending that Jenkins had falsely represented to him (Sobel) that the car was a new car at the time. Sobel originally took possession of it under the lease-purchase agreement; whereas, the car at said time was in truth and in fact a used car.

The jury in the instant case found as follows: (The numbers hereunder shown are the numbers of the Special Issues):

(1) The car was not a new car when first delivered by Jenkins to Sobel on November 1, 1967 (the date of the lease-purchase agreement);

(2) That Jenkins knew at the time of the sale in 1968 that the car was not new when he delivered it to Sobel on November 1, 1967;

(3) That at the time of the sale in 1968 Jenkins represented to Sobel that the car was new as of November 1, 1967;

(4) That Sobel believed and relied on the representation of Jenkins;

(5) That Sobel, but for such reliance, would not have entered into the settlement and purchase of the car from Jenkins;

(6) That the car would have been worth $1250.00 at the time of the sale in 1968 if it had been new as of November 1, 1967;

(7) That the car was actually worth $400.00 at the time of the sale in 1968;

(8) That Jenkins wilfully and maliciously represented the car to be new;

(9) That Jenkins should have $5500.00 worth of exemplary damages assessed against him;

(10) That Sobel did not investigate the condition of the car before he got title to the car in 1968; and

(11) That the transfer of title of the car from Jenkins to Sobel was not a part of the compromise agreement entered into between Jenkins and Sobel in the former lawsuit.

Jenkins pleaded in the instant case that the settlement reached in the former lawsuit, and the order of dismissal entered pursuant thereto, is res adjudicata of all issues raised by Sobel in the instant case.

We believe Sobel's Eleventh Point of Error, as controverted by Jenkins' Reply Point Five (bearing on the jury's answer to Special Issue No. 11), points up the problem, the solution to which controls the disposition of the instant case. That is to say, the jury found in answer to Special Issue No. 11, that the transfer of title of the car from Jenkins to Sobel was not a part of the compromise agreement entered into between Jenkins and Sobel in the former lawsuit.

In order to affirm the judgment of the trial court, insofar as the problem raised by Special Issue No. 11 is concerned, it becomes necessary for us to find that there is no evidence of probative value upon which the jury could have based its answer to Special Issue No. 11. Harbin v. Seale (Tex.Sup., 1970), 461 S.W.2d 591, at page 592.

■ We believe the trial court properly entered judgment for Jenkins because the evidence shows as a matter of law that Sobel released, compromised, and settled in the former lawsuit all issues arising in the instant case. There is no evidence of probative value to support the jury's finding to Special Issue No. 11.

The former lawsuit arose out of and dealt with the same transaction as the instant case, where one of the issues specifically pleaded and raised by Sobel was that the car was "not in the condition and usable for the purposes for which it was leased and as represented by plaintiff and cross-defendant."

The former lawsuit was tried ten months after Sobel first came into possession of the car and after he or his employees had put some 5000 miles on the car. Moreover, the testimony shows that Sobel had an opportunity to inspect the car before he and Jenkins reached a settlement in the former lawsuit. At the conclusion of the testimony in the former lawsuit, the parties reached a settlement which was read in open court and subsequently executed. In our opinion, the evidence conclusively establishes that the parties in the instant case compromised and settled in the former lawsuit the issue of whether or not the car was misrepresented by Jenkins to Sobel.

Sobel now contends that the issue in the instant case is whether the car was new or used at the time the original lease was made, and that this issue was not raised or presented in the former lawsuit. We do not agree.

■ Moreover, as an additional reason for affirming the judgment of the trial court we believe there is no evidence of probative force to uphold the jury's finding to Special Issue No. 4, to the effect that Sobel relied upon Jenkins' representation that the car was new on November 1, 1967, the date of the original lease-purchase agreement.

We recognize that Sobel testified that he relied on Jenkins' representation (as evidenced by Jenkins' testimony in the former lawsuit that the car was new as of November 1, 1967); however, in the light of all the evidence and in considering other testimony of Sobel, his comment is insufficient in law to constitute any evidence of probative value.

Sobel testified on cross-examination that he did not agree with what Jenkins was

testifying about (in the former lawsuit); that he did not believe Jenkins' version in the case, and that he did not rely upon what Jenkins was saying as the truth.

Moreover, Sobel wrote Jenkins a letter dated February 15, 1968, some eight months before the alleged misrepresentation took place in which he (Sobel) accused Jenkins of misrepresenting the car and in which he accused Jenkins of lying. Sobel testified that he did not rely on anything Jenkins had said after writing that letter. In addition thereto, Sobel's pleadings in the former lawsuit alleging in effect that Jenkins had misrepresented the car to him, is in direct contradiction to any contention that Sobel may have relied on Jenkins' representation that the car was new.

There is no evidence of probative value that Sobel relied on any statements of Jenkins made by Jenkins in the former lawsuit. The material acts and conduct of Sobel, as well as the four corners of his testimony conclusively establishes a contrary result, to-wit that he did not rely on Jenkins' representation that the car was new.

■ When deciding a "no evidence" point, as in this case, this court is required to examine the record for any evidence of probative force to support this finding. However, if the evidence, examined in its most favorable light, is sufficient to raise a mere surmise or suspicion, or if all of the evidence conclusively establishes the opposite, then, in law, there is "no evidence" to support the verdict. Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884, (1946); Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361.

■ The test for determining whether there is evidence of probative value to support a jury verdict is whether reasonable minds might differ with respect thereto. Simmons & Simmons Construction Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415.

■ It has also been held that in passing upon a "no evidence" question, the test for the reviewing court is not whether there is literally no evidence or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Perkins v. Lightfoot, (Tex.Civ.App.) 10 S.W.2d 1030, (1928) error dismissed.

■ Stated another way, "no evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361, 362; State v. Vargas, (Tex.Civ.App.) 419 S.W. 2d 926, ref., n. r. e. 424 S.W.2d 416, (1968).

Here, we believe there was no more than a mere scintilla to support the jury's finding to Special Issue No. 4, and the record as a whole establishes conclusively the opposite to this jury finding.

Because of our conclusions hereinabove stated, the other points set out in appellant's brief are not material and are accordingly overruled.

Finding no error in the judgment of the trial court, it is hereby affirmed.

McDONALD, C. J., not participating.