**FIRST NATIONAL INDEMNITY COM-
PANY, Appellant,**

**v.**

**A. V. CONWAY et al., Appellees.**

**No. 16054.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 10, 1973.

Rehearing Denied May 31, 1973.

Atwell, Malouf, Musslewhite & Bynum,
Mark Davenport, Dallas, for appellant.

William R. Vance, Bryan, for appellee,
A. V. Conway.

Armond G. Schwartz, Hallettsville, for
appellee-intervenor, Hoffer Truck Co.

COLEMAN, Chief Justice.

This is an appeal from a judgment re-
forming an insurance contract on the
ground of mutual mistake, and awarding
recovery on the reformed contract. The
judgment is reversed.

A. V. Conway sued appellant, First Na-
tional Indemnity Company to reform a pol-
icy of insurance to include within its terms
a 1968 International Harvester truck
owned by Conway and damaged in a colli-
sion near Deming, New Mexico on June 29,
1970. Hoffer Truck Company, from which
Conway purchased the 1968 International
and which held a purchase money security
interest in and to the International, inter-
vened in the suit.

The trial court rendered judgment in
conformity with the verdict of the jury
and reformed the insurance policy to in-
clude the 1968 International within its cov-
erage, awarded damages to Conway in
amount of $12,000, towing costs in amount
of $692.20, interest on each of these

amounts and costs. The judgment further awarded to the intervenor, Hoffer Truck Company, the sum of $9,831.86, interest at the rate of 8½ per cent per annum and costs to be paid first to Hoffer out of the sum awarded to Conway against First National.

Appellant complains that there was neither evidence of an agreement between First National and Conway to insure the 1968 International in Policy Nos. 0956 or 1733 nor evidence that this truck was omitted therefrom through the mutual mistake of these parties; that it was undisputed that Conway's loss resulted from the unilateral mistake of Criswell, Conway's agent, thereby precluding reformation; and that the undisputed evidence showed that Criswell's negligence in failing to procure and maintain coverage on the 1968 International proximately caused the loss and, such negligence being imputed to Conway, barred his recovery.

Interstate Underwriters was a local recording agency of First National. Interstate did the underwriting on the policies of insurance in question. Ray Criswell, d/b/a Ray Criswell Insurance, an independent insurance agent in Bryan, Texas, was engaged by Conway to handle and obtain Conway's insurance on Conway's vehicles.

On June 5, 1969, First National issued its Policy No. CA 0956 to Conway, insuring a 1965 Mack truck. First National endorsed this policy to substitute a 1967 International truck for the 1965 Mack truck on August 18, 1969. Conway traded the 1967 International on December 24, 1969, for a 1968 International and notified Criswell on the same day of his desire to obtain coverage on the 1968 International. Criswell did not send the proposed endorsement which included the 1968 International to Interstate until February 2, 1970. It was the standard practice, and Criswell understood that the endorsement in question was not effective, and that no coverage on the 1968 International existed, until such time as First National accepted the proposed endorsement. Criswell testified also that he was an independent agent writing general insurance for different companies, was in no way connected with First National and had no authority to bind it by his actions.

According to Criswell's computation an additional premium in amount of $122.00 was necessary to insure the 1968 International for the remainder of the period of Policy No. 0956 which was to expire on June 5, 1970. Conway remitted this amount to Criswell but it was not forwarded to First National.

Vasilio, an underwriter for First National, testified that he first became involved with Policy No. 0956 when he received Criswell's endorsement on February 2, 1970 which requested substitution of the 1968 International in place of the 1967 International. By memo dated February 2, 1970, Vasilio notified Criswell that the original cost new and the present value of the 1968 International were required before this vehicle could be insured. The memo requested Criswell to furnish this information and stated that after compliance therewith the new unit would be added to Conway's policy. It does not appear that the requested information was furnished to First National.

Vasilio's memo was received by Criswell's office but it was not personally handled by Criswell. Interstate did not follow up Vasilio's memo of February 7, 1970, and Roberts testified that it was the common practice of Interstate not to make follow-ups once notice had been given to the independent agent that his request could not be complied with until additional information was furnished.

Donna Carey, also then employed by Interstate, testified by way of deposition that she assumed the handling of Conway's file approximately one month prior to the renewal date of Policy 0956. She stated that the endorsement by Criswell dated February 2, 1970, requesting substitution of the

1968 International for the 1967 International, was on Conway's file when she assumed its responsibility. On May 7, 1970 Carey mailed a letter of renewal to the Criswell agency. This letter called attention to the fact that Policy No. 0956 describing only the 1967 International was going to expire on June 5, 1970 and inquired whether this policy was to be renewed. This letter referred to no vehicle other than a 1967 International. Carey denied that she as an underwriter for Interstate had knowledge of the fact that Interstate was insuring the 1968 International as of that date. She testified that despite the fact that she knew of the endorsement by Criswell dated February 2, 1970, this endorsement was invalid because Criswell had no authority to bind Interstate and that the additional requested information concerning cost new and present value of the 1968 International was not contained in the endorsement.

Carey testified that she received a memo from Criswell requesting renewal of Policy No. 0956 and that attached thereto was a personal check in amount of $265.00 purported to be signed by Mrs. Conway and which represented 25% of the total premium cost of renewal. This check was accepted by Interstate and deposited to its account and Policy No. 1733 was then issued. Carey testified that the total renewal premium was calculated on the basis of renewing insurance on the 1967 International from existing information contained in Conway's file.

Policy No. 1733, which purported to renew Policy No. 0956, provided coverage between June 5, 1970, and June 5, 1971. It described only the 1967 International.

A memo dated June 17, 1970, was sent to Interstate by Etta Calhoun, Criswell's employee, requesting that Policy No. 1733 be endorsed to cover the 1968 International. Carey responded thereto by memo dated June 23, 1970, the material parts of which follow:

June 23, 1970

Dear Miss Calhoun:

We have received your request for the 1968 International # YO14856 to be added to the captioned policy. However, we cannot determine the premium without the cost new and the present value. The former policy, CA 000956 was not endorsed to cover the 1968 because we never received the cost new which was requested 2/7/70. Does the insured wish to insure both the 1967 International and the 1968 International? . . .

Miss Calhoun answered Carey's memo on the reply portion thereof in part as follows:

6–26–70 to Donna Carey

*We are attaching a copy* of the endorsement issued from this office 2/2/70 showing the *1967 International eliminated* and the *1968 International added.* The insured only has the one truck

. . .

The envelope in which Miss Calhoun's reply was mailed was postmarked June 26, 1970. It is uncertain on what date Interstate received Miss Calhoun's reply of June 26.

The evidence shows that the 1968 International was damaged on June 29, 1970. Judicial notice is taken that June 26, 1970, fell on Friday and June 29, 1970, fell on Monday. The evidence shows that Policy No. 1733 was cancelled by Interstate on June 29, 1970, for "underwriting reasons" but the evidence is not certain whether Interstate had notice of the damage to the 1968 International on that date, nor is it certain that this factor prompted cancellation of Policy No. 1733. The effective date of cancellation of the policy was July 11, 1970, and Interstate tendered return of all premiums on Policy No. 1733 in its pleadings.

All evidence which bore on the parties' intention to insure the 1968 International was presented in appellee Conway's case in chief. A recapitulation of the testimony of Interstate's underwriters Vasilio and Carey and the documentary evidence introduced at the trial bearing on an agreement to insure the 1968 International shows that before, at, and after the time Policy No. 1733 was issued by First National:

1) Criswell's endorsement dated February 2, 1970, evidencing Conway's desire to add the 1968 International and deleting the 1967 International was present in Conway's file and such desire was known to Vasilio and Carey;

2) Both Vasilio and Carey had notified Criswell of Interstate's need to obtain from Criswell information on the original cost new and present value of the 1968 International before it could be insured;

3) Criswell was not authorized to bind First National by the endorsement of February 2, 1970;

4) A check in the amount of $265.00 representing a 25% down payment on premium cost of renewal of Policy No. 0956 was received, accepted and deposited by Interstate;

5) The premium for coverage from June 5, 1970, to June 5, 1971, increased from $896.00 to $1062.00;

6) Policy No. 1733, the premium for which was computed on the basis of insuring a 1967 International according to the testimony of Carey, was issued by First National and described only the 1967 International;

7) Carey testified that she was not mistaken as to the vehicle to be covered and that it was not Interstate's intention to cover the 1968 International in Policy No. 1733;

8) Carey's memo of June 23, 1970, was written after the effective date (June 5) of Policy No. 1733; and

9) The cost new and present value of the 1968 International repeatedly requested by Interstate in its correspondence with Criswell had not been furnished as of the date of issuance of Policy No. 1733.

This court in considering appellant's contentions that the trial court erred in overruling its motions for instructed verdict and for judgment notwithstanding the verdict, has to consider only that evidence which, viewed in its most favorable light, supported the jury findings and must disregard all evidence which would lead to a contrary conclusion. Employer's National Life Ins. Co. of Dallas, Texas v. Willits, 436 S.W.2d 918 (Tex.Civ.App.—Amarillo 1968, writ ref'd, n. r. e.).

In reviewing the appellate court's role in the disposition of "no evidence" points the Waco Court of Civil Appeals stated in Sobel v. Jenkins, 468 S.W.2d 884 (Tex.Civ. App.—Waco 1971, reversed on other grounds 477 S.W.2d 863):

"It has also been held that in passing upon a 'no evidence' question, the test for the reviewing court is not whether there is literally no evidence or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Perkins v. Lightfoot (Tex. Civ.App.), 10 S.W.2d 1030 (1928), error dismissed.

"Stated another way, 'no evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) A complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Texas Law

Review 361, 362; State v. Vargas (Tex. Civ.App.), 419 S.W.2d 926, ref., n. r. e. 424 S.W.2d 416 (1968)."

■ The evidence bearing on the vital facts of mutual agreement and mutual mistake viewed in the light most favorable to appellee Conway raises at most a mere surmise or suspicion of Interstate's intent to insure the 1968 International. It follows that there is no evidence sufficient in law to support the verdict. Sobel v. Jenkins, supra.

Our Supreme Court has stated:

"The equitable reformation of a written contract is based upon the premise that a contract was actually made, but the written memorandum thereof, because of a mutual mistake, does not truly reflect the actual agreement of the parties. 'Reformation is a proper remedy when the parties have reached a definite and explicit agreement, understood in the same sense by both, but, by their mutual or common mistake, the written contract fails to express this agreement.' Black on Rescission and Cancellation, Sec. 11, cited with approval in Marlin Associates v. Trinity Universal Ins. Co., 226 S.W.2d 190 (Tex.Civ.App.1950, no wr. hist.) and Continental Casualty Co. v. Bock, 340 S. W.2d 527 (Tex.Civ.App.1960, ref. n. r. e.). See also 49 Tex.Jur.2d Reformation of Instruments, § 9." Champlin Oil & Refining Company v. Chastain, 403 S. W.2d 376 (Tex.Sup.1965).

In Continental Oil Company v. Doornbos, 402 S.W.2 879 (Tex.Sup.1966), the Supreme Court further stated:

"It is basic to the remedy of reformation that the true agreement between the parties be shown. Sun Oil Company v. Bennett, 125 Tex. 540, 84 S.W.2d 447 (1935); Pegues v. Dilworth, 134 Tex. 169, 132 S.W.2d 582 (1939); Burrows v. Seale, 148 Tex. 411, 225 S.W.2d 966

(1950). Once such agreement is established, equity may reform the written instrument so as to conform thereto, but cannot create and bring into being an agreement not made by the parties."

■ The party seeking reformation has the burden of proving that there was an agreement reached between him and the other parties to the subsequent written agreement and must show precisely what the agreement was and that a different agreement appearing in the written instrument was placed there through the mutual mistake of the parties. Liddell v. Smith, 351 S.W.2d 335 (Tex.Civ.App.—Houston, 1st Dist., 1961), 367 S.W.2d 662 (Tex.Sup. 1963, rev'd on other grounds).

While there is evidence that Conway was mistaken in the belief that his 1968 International was covered by Policy No. 1733, the record is otherwise wholly devoid of any evidence tending to show that First National acting through Interstate and Conway acting through Criswell reached a meeting of the minds to insure the 1968 International. The failure to reach such a meeting of the minds is established by unimpeached documentary evidence as well as by the testimony of Vasilio, Carey and Roberts, who informed Criswell that Interstate could not issue a policy covering the 1968 International until the cost new and present value thereof were furnished to Criswell.

■ Although Conway's mistake as to the coverage provided by Policy No. 1733 caused by his failure to examine this policy would not preclude reformation it is clear that, standing alone, it does not authorize it. See Fireman's Fund Indemnity Co. v. Boyle General Tire Co., 392 S.W.2d 352 (Tex.Sup.1965).

From the record it appears that mistakes, if any were present other than Conway's own mistake, occurred during the negotiation stage of the agreement.

**16**

In discussing the legal effect of mistakes occurring during the negotiation stage the court stated in Continental Casualty Co. v. Bock, 340 S.W.2d 527 (Tex.Civ.App., Houston, 1st Dist., 1960, writ ref'd, n. r. e.):

"Such mistakes occurred during the negotiations, thereby preventing the parties from entering into any definite, explicit oral contract which might form the basis for reformation of the policy . . There is no evidence that Rose or Mrs. Salinas induced Bullock to make such mistakes. Hence appellee had the burden of showing by *clear, convincing* and *satisfactory* proof that any mistake relied upon was a mutual one . . ." (Emphasis added) See also Zurich Ins. Co. v. Bass, Tex.Civ.App., 443 S.W.2d 371, 1969, no writ.

Conway abandoned his suit against Criswell based on Criswell's negligence and proceeded solely against First National for reformation of the contract based on mutual mistake. There were no pleadings, evidence or statements contained in appellee's briefs or oral argument raising the issues of estoppel or waiver and it does not appear from the record that estoppel or waiver can be found as a matter of law. In Continental Casualty, supra, the court held:

"We find no evidence in the record giving rise to either estoppel or waiver, which are independent grounds of recovery or of defense. No issues of estoppel or waiver were requested or submitted. They were, therefore, waived. (Citing cases and Rule 279, T.R.C.P.). Moreover, waiver and estoppel cannot create new rights. They merely preserve existing ones. Southland Life Ins. Co. v. Vela, 1949, 147 Tex. 478, 217 S.W.2d 660."

The judgment of the trial court is reversed and judgment is here rendered that A. V. Conway, plaintiff, and Hoffer Truck Company, intervenor, take nothing.